George Vogel, a white man and a cripple, brought this suit against the Saenger Theatres, Inc., for $250 as damages for humiliation and injury to his feelings because of his ejectment from the Saenger Theatre. He alleges that on May 1, 1943, accompanied by his wife, he purchased tickets of admission to a performance then being presented; that while his wife was purchasing some candy at a stand just inside the entrance, he was approached by a young woman employee of defendant, who told him that he could not stay for the performance because he was a cripple; that he asked to see the manager, who appeared and affirmed the statement of the woman employee and added that cripples were not admitted to the theatre except on Tuesdays and Fridays and then only to certain portions of the theatre. He further alleges that he protested, but, nevertheless, the manager insisted upon the return of the ticket stubs and handed him a dollar bill, the cost of the tickets.
Defendant, now known as the Paramount-Richards Theatres, Inc., filed an answer which was, in effect, a general denial.
There was judgment below in favor of defendant and plaintiff has appealed.
There is some controversy in the testimony as to the manner of plaintiff's ejectment from the theatre. It appears that there was a rule in effect at that particular theatre which excluded cripples from performances on Saturdays and Sundays. According to the testimony of the manager this regulation had been adopted in the interest of the safety of the cripples as well as the other patrons of the theatre. The cripples, when admitted, were assigned to certain sections of the theatre near the exits in order to facilitate their leaving the theatre in the event of fire or other disturbance.
While plaintiff and his wife do not entirely agree with the manager's version of the occurrence, we are satisfied that the plaintiff was subjected to no unnecessary humiliation in the enforcement of the rule, though, of course, it is unpleasant to be the object of any discrimination whatever.
It is conceded that in the absence of a special statute, the proprietor of a theatre may exclude anyone, with or without reason, as was expressly held by this Court in Gorman et al. v. United Theatres, 177 So. 463, but counsel points to Act 38 of 1869, now incorporated in the Revised Statutes as Section 456. This Act is entitled "An Act to enforce the Thirteenth Article of the Constitution of this State, and to regulate the Licenses mentioned in said thirteenth article."
The Constitution referred to is that of 1868 and the thirteenth article reads as follows:
"All persons shall enjoy equal rights and privileges upon any conveyance of a public character; and all places of business, or of public resort, or for which a license is required by either State, parish, or municipal authority, shall be deemed places of a public character, and shall be opened to the accommodation and patronage of all persons, without distinction or discrimination on account of race or color." (Italics ours)
The Act of 1869, in its first section, consistent with its title, prohibits discrimination against any person because of "race or color" by common carriers. Section 2 thereof reads as follows:
"That except in the cases enumerated in section one of this act (disorderly conduct), no person shall be refused admission to or entertainment at any public inn, hotel or place of public resort."
It will be noted that in this section the words "race or color" are not repeated.
It has been held that Section 2 of the Act refers to theaters. Joseph v. Bidwell, 28 La.Ann. 382, 26 Am.Rep. 102.
Article 13 of the Constitution of 1868 does not appear in the Constitution of 1879 nor in any subsequent constitution of this State. The repeal or failure to reenact this article automatically repealed Act No. 38 of 1869, the enabling statute designed for its enforcement.
It is our opinion, therefore, or, at least, the opinion of the writer, that the act relied upon is no longer in effect in this State. The fact that the Act was incorporated as Section 456 of the Revised Statutes adds nothing to it. However, when it was incorporated as one of the Revised Statutes in 1870, Article 13 of the Constitution of 1868 was still in effect. *Page 469 
There is some reference to Act No. 38 of 1869 in Malczewski v. New Orleans Railway Light Co., 156 La. 830, 101 So. 213, 35 A.L.R. 553, decided in 1924, which might be construed as a statement that the act, there referred to by its section number of the Revised Statutes, was still in effect, but there is no mention in that case of Section 13 of the Constitution of 1868, as having been abrogated and, consequently, the point to the effect that an enabling statute has no vitality except such as is given it by the ordinance it is designed to enforce, and that it dies with the ordinance, was not raised. If, however, we are mistaken in the view which we have expressed concerning the repeal of the Act of 1869, and though it might be said that that statute is in full force and effect, in our opinion it was never intended to do anything more than to prevent discrimination against individuals because of race or color.
It is true that Section 2 of the Act does not repeat the words "race or color" and standing alone might be construed as a prohibition against the arbitrary refusal to admit any person "at any public inn, hotel or place of public resort within the State", but when considered in connection with the title of the act and of Section 1, the conclusion is inescapable that the purpose of Section 2 was to add inns, hotels and other public places to public carriers and to prohibit proprietors of such places discriminating against individuals on account of their race or color. This is the more evident when it is considered that the only purpose of the act, as expressed in its title, was to enforce Section 13 of the Constitution of 1868, which ordained that all places of public resort "shall be opened to the accommodation and patronage of all persons, without distinction or discrimination on account of race or color."
In Woollcott v. The Shubert, 217 N.Y. 212, 111 N.E. 829, 830, L.R.A.1916E, 248, Ann.Cas.1916B, 726, the Court of Appeal of New York considered a similar statute of that State, which was invoked by a dramatic critic by the name of Woollcott, who had been excluded from a New York Theatre because the proprietor was offended by his criticisms. The Court stated:
"At the common law a theater, while affected by a public interest which justified licensing under the police power or for the purpose of revenue, is in no sense public property or a public enterprise. It is not governed by the rules which relate to common carriers or other public utilities. The proprietor does not derive from the state the franchise to initiate and conduct it. His right to and control of it is the same as that of any private citizen in his property and affairs. He has the right to decide who shall be admitted or excluded. His rights at common law, in the respect of controlling the property, entertainments, and audience, have been too recently determined by us to be now questionable. People ex rel. Burnham v. Flynn, 189 N.Y. 180,82 N.E. 169, 12 Ann.Cas. 420; Collister v. Hayman, 183 N.Y. 250,76 N.E. 20, 1 L.R.A., N.S., 1188, 111 Am.St.Rep. 740, 5 Ann.Cas. 344; Aaron v. Ward, 203 N.Y. 351, 96 N.E. 736, 38 L.R.A., N.S., 204. Under the common law the rights of the plaintiff were not violated by the acts of the defendants.
"These rights were restricted by the statute of 1895, commonly known as the Civil Rights Act (Laws of 1895, chapter 1042). It was entitled `An act to protect all citizens in their civil and legal rights.'"
The Court then discussed the Civil Rights Statute of New York State, which seems to be much broader in its terms than our statute and reaffirmed its holding in a previous case, saying:
"`It is plain that the Legislature did not intend to confer upon every person all the rights, advantages and privileges in places of amusement or accommodation, which might be enjoyed by another. Any discrimination not based upon race, creed, or color does not fall within the condemnation of the statute.' Grannan v. Westchester Racing Ass'n, 153 N.Y. 449, 465, 47 N.E. 896, 901."
Our conclusion is that the judgment appealed from is correct, consequently, and
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., concurs in decree.