Jasen, J.
(concurring). While I concur in the opinion of Judge Titone, I write to emphasize what I believe to be a critical limitation upon a shopping mall owner’s right to exclude expressionist activity. In my view, where the owner of a shopping mall voluntarily and affirmatively creates a public forum or accommodation for expressionist activity, by inviting or permitting members of the general public to engage in noncommercial expressive conduct of a civic or community nature in the common areas of the mall, the owner cannot, at the same time, exclude particular expressionists upon purely discriminatory or arbitrary grounds.
In the first instance, the exclusive choice and control rests with the property owner as to whether a mall shall be open or closed to noncommercial expressionist activity. As is true for any owner of private property, the mall owner may exercise his common-law right to exclude and, thereby, deny access to all individuals whose purpose is other than to engage in shopping, browsing, or other commercial or business activities. (Madden v Queens County Jockey Club, 296 NY 249, 253-254, cert denied 332 US 761.)
However, once the owner of a shopping mall has opened the doors to the public to participate in the exchange of noncommercial ideas, such as to present or partake of cultural, educational, or political activities, the common-law right of the owner to exclude any expressionist from his private property must be limited to nondiscriminatory and nonarbitrary grounds. (See, Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d 401, 409-415; Jacobson v New York Racing Assn., 33 NY2d 144, 149-150.) The owner may not exclude any person or group from the common areas of a mall,, thus serving as a public forum or accommodation for expressionist purposes, on the basis of race, creed, color, gender, political belief, content of expression, or some other reason repugnant to the law or public policy of this State. (See, Matter of Walker, 64 NY2d 354, 359; *508 Hollis v Drew Theol. Seminary, 95 NY 166, 172.) Of course, a mall owner must still be permitted to regulate the expressive conduct so as to preclude disruption, vulgarity, incitement, or whatever else threatens the health or safety of the patrons or interferes with the primary commercial purpose of a mall. But persons otherwise welcome in a shopping mall for expressionist purposes cannot be excluded solely on the basis of the ideational content of their expression or for some other invidious reason.
It is imperative that this court recognize, not only the absence of a constitutional right of free expression in a privately owned shopping mall, but also the presence of necessary limitations upon the owner’s common-law right of exclusion. The principles which mandate these limitations constitute the most fundamental precepts of nondiscrimination and nonarbitrariness which underlie the decisional law, statutes and public policy of this State. (See, e.g., Matter of United States Power Squadrons v State Human Rights Appeal Bd., supra; Jacobson v New York Racing Assn., supra; Madden v Queens County Jockey Club, supra; Woollcott v Shubert, 217 NY 212, 216-219; Aaron v Ward, 203 NY 351, 356-357; Civil Rights Law § 40; Executive Law §§ 292, 296.)
Under the facts presented in this case, it cannot be said that the mall owner acted in a discriminatory or arbitrary fashion. The Smith Haven Mall does provide rent-free space to members of the general public for various expressionist activities, but plaintiffs have sought only to engage in the distribution of handbills which is uniformly prohibited by the mall owner. The absolute prohibition against this particular manner of expression, being an entirely content-neutral and reasonable means of avoiding litter, confrontation and interference with commercial activity, is a nonarbitrary rule which does not violate any antidiscrimination law or public policy. Consequently, in my view, the mall owner’s ban against handbilling is a permissible exercise of the common-law right of exclusion.